IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ARTHUR TAYLOR, ) | |
|        Plaintiff, ) | |
| ) | |
| v. ) | No. 07-4212-CV-C-FJG |
| ) | |
| DAVE DORMIRE, et al., ) | |
|        Defendants. ) | |

# ORDER

Pending before the Court are (1) Defendants' Motion in Limine (Doc. No. 285), (2) Plaintiff's Worksheet on Motions in Limine (Doc. No. 286), and (3) Plaintiff's Objection to Amended Voir Dire (Doc. No. 290). Each will be considered below.

**A.    Defendants' Motion in Limine to Exclude Evidence Regarding Allegations that the Defendants Violated the Plaintiff's Constitutional Rights by Denying Him Sleep (Doc. No. 285)**

Defendants move for an order in limine excluding evidence regarding allegations that plaintiff was deprived of constitutional rights due to lack of sleep. Defendants state that plaintiff "abandoned" this claim in the first trial because plaintiff did not submit a jury instruction regarding sleep deprivation, and then on appeal did not argue that the court should have given such an instruction sua sponte. Defendants therefore argue that the claim has been waived, or the Court's non-instruction is the law of the case. Defendants further argue that there is no evidence to support a sleep deprivation claim at trial.

In response, plaintiff argues that (1) the law of the case doctrine does not apply because the Court of Appeals did not issue an opinion addressing sleep deprivation, see Bethea v. Levi Straus Co., 916 F.2d 453, 456 (8th Cir. 1990); Craftsmen Limousine, Inc. v. Ford Motor Co., No. 98-3454-CV-S-DW, 2005 WL 2321662, at *1 (W.D. Mo. Sept. 12, 2005)(holding that "scope of the new trial is a distinct issue"); (2) defendants' analogy to the

claims against former defendant Friesen in inapposite, as plaintiff did not request the appellate court reverse the judgment as to defendant Friesen; and (3) summary judgment has already been denied as to sleep deprivation claims, see Orders, Doc. No. 90 and Doc. No. 249. Plaintiff further suggests that defendants' argument regarding the strength of the evidence is circular, as we do not know yet how the evidence will come out at trial.

Upon the Court's consideration, defendants' motion (Doc. No. 285) is **OVERRULED**. The Court notes that a great deal of evidence regarding lack of sleep was allowed at the first trial, without objection from defendants (see, e.g., Tr. 115:2-4 (Plaintiff, describing the bench: "It's horrible. It's a lot of discomfort, a lot of pain. You're not able to lay down, really not able to move that much, just really hard on your body."); Tr. 118:22-24 (Taylor testimony: Q: "Can you sleep?" A. "No. It's so uncomfortable that it's almost impossible to sleep."); Tr. 124:6-13 (Taylor testimony: Q: "All right. So did you spend all night Saturday, September 10th, on that bench? A: Yes, sir. Q: Were you able to sleep? A: No sir. Q: By the morning of Sunday, September 11th, what was your condition? A: Like I said, I was extremely tired, weak. . . ."); Tr. 125:10-13 (Taylor testimony: "Well, on the 11th I was actually in that cell to receive breakfast and lunch, but I didn't eat because I was so exhausted from being on the restraint bench for the two days prior. I was just -- I was sleeping.")). Additionally, the Eighth Circuit noted facts regarding lack of sleep in their background statement of the case: "Taylor did not eat the offered breakfast or lunch [on the 11th] because he was sleeping. He had been unable to sleep the previous two days while sitting upright on the restraint bench." Taylor v. Dormire, 690 F.3d 898, 899 (8th Cir. 2012). The Court finds, therefore, that plaintiff did not waive presentation of evidence regarding a claim of sleep deprivation by his conduct in the first trial.

2

The Court will determine whether to instruct the jury on a "lack of sleep" claim after the presentation of evidence in this matter. The Court finds, however, that plaintiff is not precluded from requesting such an instruction just because one was not requested at the first trial. See Taylor v. Dormire, 690 F.3d 898, 901 n.1 (8th Cir. 2012) (finding, with respect to the argument that it was plain error to not give a deliberate indifference instruction at trial, the "court need not address that issue because Taylor can request a deliberate indifference instruction if the issue arises again on remand in light of evidence at the retrial."); Qualley v. Clo-Tex Int'l, Inc., 212 F.3d 1123, 1132 n.18 (8th Cir. 2000) ("In light of our decision to remand the case, we decline to address whether a jury instruction on the doctrine of in pari delicto should be given in the new trial -- that determination must be made in light of all of the admissible evidence submitted to the district court on retrial."). In addition, plaintiff's pro se amended complaint (Doc. No. 31, p. 6) makes a claim that he was "denied and deprived of all basic human necessities such as . . . sleep," and the sleep deprivation claim was not disposed of on summary judgment (see Doc. Nos. 90 and 249).

Accordingly, for all the foregoing reasons, defendants' motion in limine regarding plaintiff's denial of sleep claim (Doc. No. 285) is **OVERRULED.**

**B.     Plaintiff's Motion in Limine to Exclude Videotapes (Doc. No. 286)**

Plaintiff notes that although the incident at issue in this matter took place over the course of six days (more than 125 hours), only three video-recordings documenting approximately three hours of the incident have been preserved. Any remaining video of the timeframe at issue was destroyed. Plaintiffs state that because the videotapes cover such a short period of the total time of this incident, they should be excluded as they tell an incomplete story and give a skewed view of the incident (making them have little to no

3

probative value and unfairly prejudicial under FRE 403).

### 1. Videotapes 1 and 2

During the first trial, the Court excluded the first and second videotapes, which show Taylor and other prisoners sitting on the restraint bench (rapping, talking, and laughing at times), stating on the record: "I have a problem with allowing the state to use videotape of this to reinforce when you don't have videotape of the whole timeframe so that plaintiff can benefit from that. I think that's unfair, and so I'm not going to allow that." Tr. 280. The Court also indicated on the record, "We don't have a tape that shows 24/7 of Mr. Taylor. I mean, there could have been times that you—tapes were missing where he was in the posture of suffering as he's described." Tr. 279. Plaintiff believes the same result should occur in this trial, as the videos are irrelevant, misleading, unfairly prejudicial, and they would waste a significant amount of time. In the alternative, if any of these tapes are played to the jury, the jury should be given an adverse inference instruction as requested in plaintiff's first trial brief (Doc. No. 168).

Defendants argue, in response, that Videotapes 1 and 2 are critical to defendant Hovis's defense, as they depict the afternoon of September 11, 2005, when defendant Hovis was on duty. Defendant Hovis notes that his interactions with defendant did not begin until September 11, 2005, and on that date plaintiff was not placed on the restraint bench until the afternoon (around 2 p.m.), and Hovis's shift ended at 3:30 p.m. Therefore, defendants argue that as to defendant Hovis, the videos depict the entirety of the relevant time on September 11, 2005 where Hovis had any interaction with plaintiff. Defendants also argue that Videos 1 and 2 impeach Taylor's testimony on specific points—that he was exhausted, in horrible pain, and cuffed with hands behind his back. Defendant Hovis

4

indicates he designates Video 2 at time stamp 1:16:50 – 1:32:42, both for purposes of impeachment and for the purpose of showing Hovis's interactions with Taylor on September 11, 2005.

Plaintiff's motion in limine with respect to Videos 1 and 2 is **SUSTAINED**. The videos depict only a small amount of the total 6-day incident, and presentation of such a small amount of evidence when remaining videos have been destroyed would be prejudicial to plaintiff. Furthermore, the probative value of the contents of the videos, especially the designated portions of Video 2 from time stamp 1:16:50 – 1:32:42 (where plaintiff is rapping while chained to the bench), is substantially outweighed by the dangers of unfair prejudice and misleading the jury under FRE 403.

### 2. Videotape 3

In the first trial, the Court provisionally ruled that the circumstances of plaintiff being moved from the bench to the stool were inadmissible (Doc. No. 178, pp. 6-7). However, at trial, the Court allowed the playing of portions of Videotape 3 (which shows plaintiff being moved from the bench to the stool) as plaintiff opened the door to this evidence by reading a portion of inmate Shannon Dixon's deposition testimony saying that Taylor was thrown to the ground during this movement. Tr. 276. Plaintiff argues that, assuming the door is not opened by reading Shannon Dixon's testimony (or otherwise), Videotape 3 should be excluded under the Court's previous order, Doc. No. 178. Plaintiff also argues that the video is of poor qualify, spliced over in part (making it misleading and incomplete), and the screen goes white for nearly three minutes.

Defendant Hovis states that, once again, Video 3 should come into evidence if the plaintiff alleges excessive force in the act of transporting him to the visiting booth, as the

5

video depicts this incident in its entirety. Defendants designate Video 3 at timestamp 3:43 – 9:41 for the purpose of impeaching Taylor if he claims excessive force in transporting him to the visiting booth. Defendants also state that they designate Video 3 at 3:43-4:30, which should come in as rebuttal evidence, as plaintiff's position has been that he told Hovis and other that he would take any cell in Housing Unit 7A, provided that no declared enemy was in the cell. However, in the video, he states several times that he would go nowhere but a "PC" (protective custody) cell.

Upon consideration of the motion and response, the Court finds that plaintiff's motion in limine regarding Video 3 should be **PROVISIONALLY SUSTAINED.** Video 3 will not be played for the jury unless plaintiff opens the door.

C.   **Plaintiff's Objections to Defendants' Second Amended Proposed Voir Dire Question**

In response to the Court's Order (Doc. No. 279) striking their proposed Voir Dire Question 27 because it used the words "prison disturbance," defendants propose the following replacement voir dire question:

> 27. The plaintiff claims that defendants used excessive for [sic] in placing him on a restraint bench, where he would not receive meals. Defendants deny that they used excessive force in that the circumstances prevented them from providing the plaintiff with a new cell and that, pursuant to Department of Corrections policy, they could not feed the plaintiff until he returned to a cell. With just that little bit of information about the case, does anyone feel that you could not decide this case based on the facts presented and the instructions and law the Judge gives to you?

Doc. No. 284.

Plaintiff objects to the proposed amended voir dire question, indicating (1) the question focuses entirely upon excessive force and does not mention deliberate

6

indifference, and thus fails to accurately describe plaintiffs' theory of the case and will mislead the jury; (2) the question mentions "Department of Corrections policy," which wrongly suggests that following a Missouri state policy excuses federal constitutional violations; and (3) the use of the term "circumstances" is vague and will mislead the jury. Plaintiff argues that Question 27 goes too deep into the merits of the case, and is not appropriate for voir dire.

Upon consideration of the parties' arguments, plaintiff's objection (Doc. No. 290) is **SUSTAINED.**

**IT IS SO ORDERED.**

Date: <u>June 21, 2013</u>　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge

7